## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARRY C. SCHULTZ,                        )<br>                                          )<br>            Plaintiff,                   )<br>                                          )<br>vs.                                       )<br>                                          )<br>UNUMPROVIDENT CORPORATION, a             )<br>Foreign Corporation; UNUM LIFE INSURANCE )<br>COMPANY OF AMERICA, a Foreign            )<br>Corporation; and UNUM CORPORATION,       )<br>a Foreign Corporation,                   )<br>                                          )<br>            Defendants.                  ) | Case No. 06-CV-622-GKF-PJC |

### **OPINION AND ORDER**

This matter comes before the court on plaintiff's Motion to Remand [Doc. No. 16] and Motion to Strike Pleadings [Doc. No. 37]. For the reasons set forth below, both motions are denied.

### **I. Background**

Plaintiff filed suit against defendants in Tulsa County District Court on October 5, 2006, alleging breach of a long term disability policy issued by UNUM Life to plaintiff's company, BCS, Industries, Inc. ("BCS") in 1996. [Doc. No. 2-2, Petition]. Plaintiff, who has received long term disability benefits from defendants since 2003, alleges defendants have failed to pay benefits in a timely manner; failed to accurately calculate his monthly benefits; "wrongfully and tortiously" refused to increase benefits to the correct amount; failed to conduct fair and unbiased investigations; "wrongfully and tortiously" conducted outcome-based investigations; failed to conduct occupation evaluations; since January 6, 2006, have "wrongfully and tortiously" garnished plaintiff's monthly benefits for Social Security disability; since May 2006, have

"wrongfully and tortiously" garnished Social Security payments received by his children; and since June 2006, "wrongfully and tortiously" garnished all of his net disability benefits to recover alleged overpayments. [*Id.* ¶10].

Plaintiff was formerly an officer and shareholder of BCS. [Doc. No. 2, p. 4, ¶2 and Ex. 8 thereto]. BCS was the holding company for Custom Building Services, Inc. [*Id.,* ¶3 and Ex. 9 thereto]. BCS also operated as "doing business as" Custom Building Systems, Inc. ("CBS, Inc."). [*Id.,* ¶5]. BCS d/b/a CBS, Inc., purchased a group long term disability insurance policy, policy number 510750 001 from UNUM Life in 1996. [*Id.*, ¶5 and Ex. 10 thereto.] The plan expressly provides that the Employee Retirement Income Security Act of 1974 ("ERISA") is applicable. [*Id.,* p. 6, ¶15 and Ex. 10 thereto, at UACL 2838, 2828]. CBS, Inc., initially sought coverage for 17 employees, including plaintiff. [*Id.,* pp. 4-5, ¶5 and Ex. 12 thereto]. Under the terms of the plan, CBS, Inc., and the employee shared the cost of the premium for the plan. [*Id.*, ¶16 and Ex. 10, Policy, at UACL 2823]. CBS, Inc., made the plan available to its eligible employees as part of its employee benefits package and notified employees of the existence of the plan in its Employee Handbook. [*Id.,* pp. 6-7, ¶¶16, 19 and Exs. 9, 14]. As president of CBS, Inc., plaintiff signed and acknowledged the Employee Handbook, which contained the information describing the long term disability plan. [*Id.,* p. 7, ¶20 and Ex. 14]. Once an eligible employee enrolled for coverage under the plan, CBS, Inc., would then deduct the employee's portion of the payment for the premiums from the paycheck of any employee who elected to participate in the plan and could also pay its portion of the premium. [*Id.,* p. 7;, ¶21 and Ex. 9]. As the policyholder, CBS, Inc., was responsible for collecting all premiums and then transmitting such amounts to UNUM at its home office by payment with a check drawn on CBS,

Inc.'s accounts. [*Id.*].

Plaintiff was injured in a boating accident July 4, 2003, and was subsequently determined by both the Social Security Administration and UNUM to be totally and permanently disabled. Under the terms of the disability policy, defendants paid LTD benefits to plaintiff. In a letter dated May 7, 2006, UNUM reduced his LTD benefits, alleging it was entitled to offset amounts plaintiff received in social security disability benefits. [Doc. No. 2, Ex. 17]. The letter also stated UNUM had overpaid benefits by $70,809.44, demanded reimbursement of that amount, and advised UNUM would apply his LTD benefits to the debt until full reimbursement was received. In June 2006, UNUM began to garnish 100 percent of his net LTD benefits to recover alleged overpayments. [*Id.*] Plaintiff contended in his state court petition that defendants owed him $37,749.21 in benefits, and he sought a determination of "what, if any, offset Defendants may take for Social Security disability and lump sum payments received by Plaintiff and/or his children." [Doc. No. 2-2].

Defendants removed the case to this court on November 9, 2006, alleging federal question jurisdiction under 28 U.S.C. §1331. Defendants contend plaintiff's claim is governed by ERISA, 29 U.S.C.§1132(a)(1)(B). Defendants also allege diversity jurisdiction under 28 U.S.C. §1332 on the grounds that plaintiff is an Oklahoma resident and defendants are all foreign corporations with their principal places of business in locations outside of Oklahoma. Defendants, who contend plaintiff owes them $57,319.59 for overpayment of LTD benefits, argue that this amount, combined with plaintiff's claim of $37,749.21, exceeds the $75,000 threshold for removal.

Plaintiff filed a Motion to Remand, arguing the disability policy is *not* governed by

ERISA. Plaintiff also contends in his motion diversity jurisdiction is also lacking because he now does not dispute the *entire* amount UNUM alleges he was overpaid, but rather only a portion of it.

After briefing on the Motion to Remand was complete, plaintiff filed a Motion to Strike [Doc. No. 37], in which, citing Fed.R.Civ.P. 12(f), he sought an order striking:

> UNUM's pleading arguing for Employee Retirement Income Security Act of 1974, 29 U.S.C. §1001, *et seq.,* as amended ("ERISA") preemption on the grounds that UNUM's arguments and statements in reliance upon the fraudulently produced policy provisions which were neither approved for use in this state, nor applicable to this case. Plaintiff Schultz also respectfully moves this Court to strike UNUM's defensive pleadings from the record as its defense are in reliance of the fraudulently produced and/or altered policy terms.

[Doc. No. 37, p. 1].

## II. Motion to Strike

Rule 12(f) of the Federal Rules of Civil Procedure provides:

> **Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act:
>
> (1) on its own; or
> (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 20 days after being served with the pleading.

The rule does not provide for striking pleadings themselves, but only insufficient defenses or redundant, immaterial, impertinent or scandalous "matter." Thus, from a procedural standpoint, Rule 12(f) is not an appropriate vehicle for the relief plaintiff seeks. Nonetheless, the court has examined plaintiff's allegations of "fraud on the court" on the merits.

Plaintiff alleges defendants have attempted to perpetrate fraud on the court because the policy produced in this litigation is not identical to the policy defendants provided to the

Oklahoma Insurance Commissioner pursuant to the Oklahoma Health Insurance Policy Language Simplification Act, 36 O.S. §3641, *et seq.*. [Doc. No. 37, p. 1].[1] This argument is a red herring.

The affidavits and documents submitted by both parties clearly establish UNUM Life issued Policy No. 510750 001 to plaintiff's former employer, BCS Industries on October 1, 1996 [Doc. No. 2, p. 4, ¶5 and Ex. 10 thereto; Doc. No. 44, Exs. 1-4], and provided the master policy, employee benefit handbooks and a summary of benefits handouts to the company, and a copy of the master policy to David Knox, the insurance broker BCS used to obtain the policy. [Doc. No. 45-2, Affidavit of David R. Knox, ¶19-20]. Plaintiff's broker now claims–more than 12 years after the fact–the policy UNUM issued does not have all of the features and terms contained in UNUM's original proposal. [*Id.,* ¶21]. Nevertheless, it is uncontested the policy provided to plaintiff and the court is the policy issued to BCS by UNUM.[2] No fraud has been perpetrated on plaintiff or the court. Therefore, plaintiff's Motion to Strike is denied.

### III. Motion to Remand

---

[1] The purpose of the Health Insurance Policy Language Simplification Act is "to establish minimum standards for language used in policies and certificates of life, accident and health insurance..." [36 O.S. §3642A]. For example, policies must receive a minimum score of 40 on the "Flesch reading ease test," a standard test for readability which has been approved by the Oklahoma Insurance Commissioner. [36 O.S. §3645A.1.]. They must be printed in not less than 10-point type, and must have a table of contents or index if they exceed a certain length. [36 O.S. §3645A.2. ,4.]. Section 3648 of the Act prohibits issuance or delivery of any policy forms unless approved by the Commissioner and §3649 provides for censure, suspension or revocation of the certificate or license of the insurer, and/or fines, for violation of the Act. [36 O.S. §§3648-3649].

[2] Defendants also vigorously contest plaintiff's allegation that the policy issued to plaintiff's company differs from the policy approved by the Oklahoma Insurance Commission. Whether defendants violated Oklahoma's Health Insurance Policy Language Simplification Act is not an issue this court needs to decide. The issue, rather, is whether defendants–as alleged by plaintiff–have perpetrated a fraud on the court.

5

### A.  Federal Question Jurisdiction

Congress has manifested an intent that state law claims falling within the scope of the civil enforcement provisions of §502 of ERISA be removable, because such claims are "of necessity so federal in character that [they] arise under federal law for purposes of 28 U.S.C. §1331." *Plumbing Indus. Bd. V. E.W. Howell Co.,* 126 F3d 61, 66 (2d Cir. 1997).  In such cases, the burden is on the defendant, as the party asserting federal jurisdiction, to demonstrate the propriety of removal.  *Marcella v. Capital District Physicians Health Plan, Inc.,* 293 F.3d 42, 46 (2d Cir. 2002).

The Tenth Circuit has adopted five criteria for determining whether an "employee welfare benefits plan" falls within ERISA's scope: (1) a plan, fund or program (2) established or maintained (3) by an employer (4) for the purpose of providing health care or disability benefits (5) to participants or their beneficiaries.  *Sipma v. Massachusetts Casualty Insurance Company,* 256 F.3d 1006, 1009 (10th Cir. 2001).

With respect to the first criterion, a plan, fund or program exists "if from the surrounding circumstances, a reasonable person can ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." *Id.* at 1012.  Here, the policy provided for long term disability benefits, which are specifically included in the definition of employee "welfare benefit plan" under ERISA, 29 U.S.C. §1002(1).  The classes of beneficiaries include eligible employees of CBS, Inc., and the benefits were funded by insurance, the premiums of which were paid jointly by CBS, Inc. and CBS, Inc. employees. [Doc. 2, Ex. 10, Policy at UACL 2834]. The benefits claims procedures were described in the CBS, Inc. Employee Handbook. [*Id.,* Ex. 14].  Thus, it is clear that a "plan, fund or program" existed.

The "established or maintained" requirement seeks to ascertain whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the establishment or maintenance of the plan. *Peckham v. Gem State Mutual of Utah,* 964 F.2d 1043, 1049 (10th Cir. 1992). In this case, BCS selected and secured the policy, which was later assumed by CBS, Inc. CBS, Inc., made the plan available to its employees as part of its employee benefits package and informed its employees of the availability of coverage under the plan. CBS, Inc. also enrolled employees for coverage under the plan, paid a portion of the insurance premiums and informed employees that the policy was part of its benefits package. Thus, it is clear a plan was "established and maintained." Similarly, it is undisputed the plan provided long term disability benefits; hence the fourth criterion is also established.

Plaintiff, however, challenges the third and fifth criteria. He argues since he was, at the time the policy was purchased, the sole owner of CBS, Inc., he was the "employer" and therefore could not be an "employee participant."[3]   Citing *Leach v. UNUM Life Insurance Company of America,* Case No. 02-CV-279-SEH-SAJ, United States District Court for the Northern District of Oklahoma, plaintiff asserts UNUM should be "estopped" by plaintiff's tax reporting practices from claiming plaintiff was an employee participant.[4] Plaintiff's reliance upon *Leach* is

---

[3] Plaintiff submits evidence that he reported his various benefits premiums as taxable income, was unable to contribute to the employee retirement fund, was ineligible to be covered by worker's compensation insurance and did not claim a loss on sale of his stock to his father for $1.00, and his father took his company's net operating loss on the father's company's tax returns. He asserts, "In simple terms, Plaintiff Schultz claimed as regular taxable income *and paid taxes* on a host of items that had he considered himself an employee participant, would have passed to him tax free." [Doc. No. 16, p. 8].

[4] In *Leach,* the court held that where an employee represented to the IRS for nearly 18 years that an ERISA plan existed, the employee was estopped from then denying the existence of such a plan. (Case No. 02-CV-279, Dkt. No. 100).

7

misplaced. "Estoppel" is "[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before or what has been legally established as true." *Black's Law Dictionary, Eighth Edition.* While plaintiff's conduct might estop *him* from asserting a contradictory position, it has no such effect on another party, such as UNUM.

Assuming for purposes of this motion that plaintiff was the "owner" of CBS, Inc., he could still be considered, for ERISA purposes, as an employee. In *Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon,* 541 U.S. 1 (2004), the Supreme Court held that the sole shareholder and president of a professional corporation qualified as a "participant" in an ERISA pension plan sponsored by his corporation, where the plan covered one or more employees other than himself. In so ruling, the court examined legislative history and statutory language of ERISA and concluded:

> Congress' aim is advanced by our reading of the text. The working employer's opportunity personally to participate and gain ERISA coverage serves as an incentive to the creation of plans that will benefit employer and nonowner employees alike. Treating working owners as participants not only furthers ERISA's purpose to promote and facilitate employee benefit plans. Recognizing the working owner as an ERISA-sheltered plan participant also avoids the anomaly that the same plan will be controlled by discrete regimes: federal-law governance for nonowner employees; state-law governance for the working owner... ERISA's goal, this Court has emphasized, is "uniform national treatment of pension benefits." Excepting working owners from the federal Act's coverage would generate administrative difficulties and is hardly consistent with a national uniformity goal.

*Id.* at 16-17 (citations omitted). In *Hall v. Standard Insurance Co.,* 381 F.Supp.2d 526 (W.D. VA. 2005), the court, applying *Yates,* held that a law firm partner enrolled in the firm's disability plan qualified as a "participant" in the plan under ERISA, *notwithstanding* that the partner had been required to pay the entire cost of the premiums out of his own pocket and could not claim

8

the payments as deductions for tax purposes.  The court stated, "While Hall may have had different tax treatment than [law firm] employees, the holding in *Yates* dictates that owners, including law firm principals, are treated in a similar manner to non-owner employees with regard to ERISA participation."  *Id.* at 531.

The court concludes that, for purposes of ERISA, plaintiff was a participant in the long term disability plan.  Thus, all criteria for ERISA qualification are met.

Plaintiff contends, however, the plan is exempt from ERISA under the "safe harbor" regulation, 29 C.F.R. §2510.3-1(j).  The regulation states:

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which
>
> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation in the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with the payroll deductions and dues checkoffs.

*Id.*  By its terms, all four requirements must be met in order for the "safe harbor" exception to apply.  Here, the employer, CBS, Inc., made contributions to the plan on behalf of plaintiff and other employee participants.[5]  Therefore, the first provision of the "safe harbor" has not been

---

[5]There is no dispute the employer made contributions to the plan on behalf of plaintiff and other employees.  The parties dispute whether the contributions made on behalf of plaintiff

met.

Nor is the third requirement satisfied, because the employer endorsed the plan.  An endorsement within the meaning of §2510.3-1(j) occurs if the employer encourages or urges member participation in the program or engages in activities that would lead an employee to reasonably conclude that the program is part of a benefit arrangement established or maintained by the employer. *See* Advisory Opinion No. 94-24-A, 1994 WL 317906.  An employer will be said to have endorsed a program within the purview of the safe harbor regulation "if, in light of all the surrounding facts and circumstances, an objectively reasonable employee would conclude on the basis of the employer's actions that the employer had not merely facilitated the program's availability but had exercised control over it and made it appear to be part and parcel of the company's own benefit package." *Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1135 (1st Cir. 1995).  Courts have held that the employer endorsed a plan where it established a trust entity in its name for purposes of plan administration [*Kanne v. Connecticut General Life Ins. Co.,* 867 F.2d 489, 821 (9th Cir. 1988)], where it determined eligibility, contributed premiums, and collected and remitted premiums paid for dependents [*Brundage-Peterson v. Compcare Health Servs. Ins. Corp.,* 877 F.2d 509, 510-11 (7th Cir. 1989)], and where the employer touted a group policy to employees as part of its customary benefits package and endorsed the policy [*Shiffler v. Equitable Life Assur. Soc. of U.S.,* 663 F.Supp. 155, 161 (E.D. Pa. 1986)].

Here, the employer notified employees of the existence of the plan and their eligibility to participate in the plan.  It also provided an employee handbook that identified the long-term

---

were "grossed up" for tax purposes. The court believes *Yates* disposes of plaintiff's tax treatment argument.

disability insurance as a benefit. As previously noted, it contributed premiums on behalf of employees for the coverage. Based upon these factors, the court finds the employer endorsed the plan within the meaning of 29 C.F.R. §§2510.3-1(j).

Because neither the first nor third elements of the regulation are met, the safe harbor exemption does not apply. The long term disability policy at issue is subject to ERISA, and this court has federal question jurisdiction pursuant to 28 U.S.C. §1331.

### B. Diversity Jurisdiction

Having concluded federal question jurisdiction of this matter exists, the court finds it unnecessary to address defendants' contention that jurisdiction also exists under 28 U.S.C. §1332.

### IV. Conclusion

For the reasons set forth above, plaintiff's Motion to Strike [Doc. No. 37] and Motion to Remand [Doc. No. 16] are hereby denied.

ENTERED this 20th day of February, 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma